## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JANE DOE

       Plaintiff,

       v.

DUKE ELLINGTON SCHOOL OF THE ARTS
PROJECT, *et al.*,

       Defendants.

Civil Action No. 1:22-cv-00811-JEB

### DECLARATION OF RORY PULLENS

I, Rory Pullens, hereby declare as follows:

1.      I am male, over the age of 18, have personal knowledge of the facts set forth herein, am competent to testify, and state that said facts are true.

2.      I am a Defendant in the above-captioned action and I submit this Declaration in support of my Motion to Dismiss Plaintiff's Complaint in the above-captioned action.

3.      I was employed by the Duke Ellington School for the Arts from January 2006 until June 2014.

4.      On April 17, 2022, I received the Summons and Complaint in this action. Attached hereto as Exhibit 1 is a true and correct copy of the documents I received on April 17, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of June, 2022, in ____Glendale_____, California.

_Rory Pullens_
Rory Pullens

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 7th day of June, 2022, I electronically filed the foregoing **DECLARATION OF RORY PULLENS** with the Court using the CM/ECF system which will then send electronic notification of the filing to the following:

Dawn Jackson
JACKSON & ASSOCIATES LAW FIRM, LLC
1300 Caraway Court, Suite 100
Largo, Maryland
djackson@jacksonassociateslawfirm.com

Howard Haley
THE HALEY FIRM, PC
7600 Georgia Avenue NW, #416
Washington, DC 20012
haleyfirm@gmail.com
*Attorneys for Plaintiff*

James A. Wiley
Burth G. Lopez
OFFICE OF THE ATTORNEY GENERAL
FOR THE DISTRICT OF COLUMBIA
Civil Litigation Division
400 6th Street NW
Washington, DC 20001
jim.wiley@dc.gov
burth.lopez@dc.gov
*Attorneys for Defendants District of Columbia and*
*District of Columbia Public School System*

Nat P. Calamis
Samantha Lewis
CARR MALONEY P.C.
2020 K Street NW, Suite 850
Washington, DC 20006
nat.calamis@carrmaloney.com
samantha.lewis@carrmaloney.com
*Attorneys for Defendant Duke Ellington*
*School of The Arts Project*

       /s/ Anessa Abrams
       Anessa Abrams

# EXHIBIT 1

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| Jane Doe | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No.  1:22-cv-00811 |
| Duke Ellington School of the Arts Project, et al. | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Rory Pullens
c/o Duke Ellington School of the Arts Project
3500 R St. NW
Washington, DC 20007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Dawn Jackson, Esq.
Howard Haley, Esq.
Jackson and Associates Lawfirm
1300 Caraway Court Ste. 100
Upper Marlboro, MD 20774

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 1:22-cv-00811

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____
on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

Filed
D.C. Superior Court
02/25/2022 16:57PM
Clerk of the Court

THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

JANE DOE
c/o Jackson and Associates Law Firm
1300 Caraway Court #100
Upper Marlboro, MD 20774

       Plaintiff,

       CASE NO.:   **2022 CA 000814 B**

   VS

DUKE ELLINGTON SCHOOL
OF THE ARTS PROJECT
3500 R St NW
Washington, DC 20007

And

RORY PULLENS, *Principal*
c/o DUKE ELLINGTON SCHOOL OF
THE ARTS PROJECT

MITZI YATES, *Principal*
c/o DUKE ELLINGTON SCHOOL OF
THE ARTS PROJECT

MARK A. WILLIAMS, *Teacher*
c/o DUKE ELLINGTON SCHOOL OF
THE ARTS PROJECT

*Serve All Duke Ellington Staff and School*
*Officials On Registered Agent:*

   Cliff Bowen
   3500 R St. NW
   Washington, DC 20007

DISTRICT OF COLUMBIA
PUBLIC SCHOOL SYSTEM
1200 First Street, NE
Washington, DC 20002

1

Filed
D.C. Superior Court
02/28/2022 18:87PM
Clerk of the Court

## THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

JANE DOE
c/o Jackson and Associates Law Firm
1300 Caraway Court #100
Upper Marlboro, MD 20774

      Plaintiff,

    VS

DUKE ELLINGTON SCHOOL
OF THE ARTS PROJECT
3500 R St NW
Washington, DC 20007

And

RORY PULLENS, *Principal*
c/o DUKE ELLINGTON SCHOOL OF
THE ARTS PROJECT

MITZI YATES, *Principal*
c/o DUKE ELLINGTON SCHOOL OF
THE ARTS PROJECT

MARK A. WILLIAMS, *Teacher*
c/o DUKE ELLINGTON SCHOOL OF
THE ARTS PROJECT

*Serve All Duke Ellington Staff and School*
*Officials On Registered Agent:*

   Cliff Bowen
   3500 R St. NW
   Washington, DC 20007

DISTRICT OF COLUMBIA
PUBLIC SCHOOL SYSTEM
1200 First Street, NE
Washington, DC 20002

CASE NO.:   2022 CA 000814 B

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

1

<u>Serve On</u>:

   Chancellor, Dr. Lewis Ferebee
   1200 First Street, NE, 10th Floor
   Washington, DC 20002

And

DISTRICT OF COLUMBIA
A MUNICIPAL CORPORATION
1350 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20004

<u>*Serve on the Mayor & Mayor's Designee:*</u>
The Honorable Muriel Bowser
Mayor, District of Columbia
   *or Designees*
   *Chad Copeland, Stephanie Litos or*
   *Tonia Robinson*
   *John Wilson Building*
   *1350 Pennsylvania Avenue, NW*
   *Washington, DC 20004*

The Honorable Karl Racine
Attorney General, District of Columbia
*or Designees*
   *Chad Copeland, Stephanie Litos or*
   *Tonia Robinson*
   441 4th St. NW RM 600 S
   Washington, DC 20001

      Defendants.

## COMPLAINT

Plaintiff Jane Doe, by and through Dawn Jackson, Esquire, and Jackson & Associates Law Firm, LLC, and Howard Haley, Esquire, and the Haley Firm, PC hereby sues Defendants Duke Ellington School of the Arts Project (hereinafter referred to as "DESAP" or "Duke Ellington"), Acting Principal Rory Pullens (hereinafter referred to as "Pullens"), Principal

2

<u>Serve On</u>:

    Chancellor, Dr. Lewis Ferebee
    1200 First Street, NE, 10th Floor
    Washington, DC 20002

And

DISTRICT OF COLUMBIA
A MUNICIPAL CORPORATION
1350 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20004

<u>Serve on the Mayor & Mayor's Designee</u>:
The Honorable Muriel Bowser
Mayor, District of Columbia
    *or Designees*
    *Chad Copeland, Stephanie Litos or*
    *Tonia Robinson*
    *John Wilson Building*
    *1350 Pennsylvania Avenue, NW*
    *Washington, DC 20004*

The Honorable Karl Racine
Attorney General, District of Columbia
*or Designees*
    *Chad Copeland, Stephanie Litos or*
    *Tonia Robinson*
    441 4ᵗʰ St. NW RM 600 S
    Washington, DC 20001

      Defendants.

---

## COMPLAINT

Plaintiff Jane Doe, by and through Dawn Jackson, Esquire, and Jackson & Associates Law Firm, LLC, and Howard Haley, Esquire, and the Haley Firm, PC hereby sues Defendants Duke Ellington School of the Arts Project (hereinafter referred to as "DESAP" or "Duke Ellington"), Acting Principal Rory Pullens (hereinafter referred to as "Pullens"), Principal

Mitzi Yates (hereinafter "Yates") and Mark Williams (hereinafter referred to as "Williams") and District of Columbia Public School System (hereinafter referred to as "DCPS"), and District of Columbia (hereinafter "District") states as follows:

## Parties

1. Defendant District of Columbia (District) is a municipal corporation responsible for the administration of governmental functions affecting the District of Columbia, and was at all times relevant to this cause of action responsible for the Plaintiff minor child as a public school student at the Duke Ellington School of the Arts Project (DESAP).

2. At all times relevant, Defendant District was responsible for the education, discipline, welfare and safety, and the supervision of students, and for establishing the operational rules, regulations and policies, including non-discrimination standards, guidelines and rules and for enforcing the rules, regulations, standards, guidelines and policies at the schools. The Defendant District was also responsible for training and supervising teachers and for ensuring that its teachers, counselors and officers and personnel obey the rules, regulations and policies and the laws of the District of Columbia and the United States. The Defendant was also responsible for creating a welcoming, safe, and educationally appropriate environment for all students.

3. Defendant District of Columbia Public Schools (DCPS) is the agency within the District of Columbia responsible for the education and welfare of students in the District of Columbia who, operate and manage K-12 schools in the District and its

3

Chancellor is in charge of the schools (including their affiliates), their students and staff discipline, welfare and safety, and the supervision of students, teachers and other personnel. Defendant is directly responsible for establishing and implementing policies, managing, supervising, and maintaining all of the public schools within the school system.

4. The Defendant DCPS is the official policy making body of the District of Columbia's Public Schools System and was at all times relevant to this cause of action, responsible for the administration of the public school system in the District of Columbia, and it executes this responsibility through its agent, the Chancellor.

5. In 1999, the Duke Ellington School of the Arts Project (DESAP), an independent 501(c)(3) organization governed by its own board of directors and comprised of the DC Public Schools (DCPS), the Ellington Fund, the John F. Kennedy Center for the performing Arts (The Kennedy Center) and The George Washington University (GW U) was created. The board includes a member from each entity. The Board governs all operations of DESAP pursuant to the sole source contracts administered by DCPS.

6. Defendant DESAP is a public secondary school located in the District of Columbia that receives federal funding. Defendants DCPS managed, operated, maintained, and controlled the subject property known as "Duke Ellington School of the Arts" located at 3500 R St NW, Washington, DC 20007 and its common areas.

7. Defendant DCPS managed the contracts for DESAP that employed agents, teachers, educators, employees, officers, staff, administrators, representatives and servants; DCPS policy bound DESAP agents, teachers, educators, employees, officers, staff,

4

administrators, representatives, and/or servants pursuant to the contracts; DCPS policy determined the qualifications or lack of qualifications of said agents, employees, officers, staff, administrators, representatives, and servants pursuant to the contracts.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this Court since the events giving rise to the Plaintiff's claims occurred in the District of Columbia.

10. Notice pursuant to DC Code 12-309 was provided by virtue of a District Police Report filed November 15, 2004

## ALLEGATIONS COMMON TO ALL COUNTS

11. Plaintiff was a minor who was the victim of unlawful intentional sexual battery, statutory rape and other acts of sexual misconduct, sexual harassment and is being identified by this pseudonym to protect her privacy.

12. The actual identity of the Plaintiff is known to the Defendants.

13. Defendants devised all policies, programs, and/or activities for the aforementioned agents, teachers, educators, employees, staff, administrators, representatives and servants, and/or residents of the community, and said agents, teachers, educators, employees, staff, administrators, representatives and servants, worked in a common effort for the benefit for the aforementioned Defendants.

5

14. Defendants Pullens and Yates were employed as Principal/Acting Principal for Defendant Duke Ellington – all staff, teachers, and educators at DESAP are mandatory reporters per the student handbook.

15. Defendant Williams was also employed by Defendant DESAP as a teacher at Duke Ellington.

16. Defendants (DESAP and DCPS) did not require Defendant Williams to undergo a background check as all other public-school teachers in the District of Columbia are required to complete.

17. Defendants (DESAP and DCPS) did not require Defendant Williams to possess or obtain a teaching license. Defendant Williams was an educator who taught at DESAP for more than 18 yrs.

18. DESAP has publicly acknowledged that they failed to keep any HR records (including, but not limited to: reports of misconduct, internal reprimands, investigations, or sanctions) for personnel prior to 2017.

19. Due to the unique relationship between DESAP and DCPS, Defendant Williams was able to avoid scrutiny for his inappropriate acts.

20. During the 2001-2005, school year, Defendant Williams was the Literary Media & Communications (then Literary Media Arts) Department Chair at Duke Ellington while Plaintiff was a student.

21. In late spring before Plaintiff's junior year, she approached Defendant Williams about joining his department and was subsequently accepted.

22. Prior to Plaintiff's acceptance to the department, Defendant Williams asked, "Will I have any angry parents to deal with?" as a condition of her acceptance to the department.

23. Defendant Williams suggested that Plaintiff work with him over the summer for private sessions to bring her current with the curriculum in his department before the school year commenced.

24. Defendant Williams met with Plaintiff alone at a local Starbucks during the summer private sessions. Plaintiff was unsure if the meetings were appropriate but understood that it was a requirement for her to graduate.

25. Once Plaintiff started her junior year, she continued to receive special attention and additional assignments from Defendant Williams. There were meetings in his office after school as well.

26. Soon thereafter, Defendant Williams began to speak and write about personal matters to Plaintiff under the pretense that it was consistent with her independent study/ "schoolwork."

27. There was one occasion that Defendant Williams used his position as a teacher to have Plaintiff try on outfits for a theatrical production privately in his office at Duke Ellington. Defendant Williams was the only faculty present in direct violation of DCPS policy.

28. At the end of Plaintiff's junior year, Defendant Williams sent Plaintiff his writing about his personal experiences and fantasies that were sexually explicit.

29. During the summer before Plaintiff's senior year, Plaintiff and Defendant Williams,

7

would regularly have extensive phone conversations late into the night (sometimes until 4:00 a.m.) – having phone sex while Defendant Williams drank alcohol and smoked cigarettes on his front porch.  These inappropriate calls were in direct violation of DCPS policy.

30. In addition, Plaintiff's summer before her senior year, Plaintiff started to drink heavily because she was upset and confused about the relationship with Defendant Williams. She was inconsolable about her feelings and confused because she believed that she was "in love" with her teacher who was married.

31. Defendant Williams would provide strong alcoholic drinks (mostly gin and tonics) to the Plaintiff at his home.

32. At one point, Plaintiff became suicidal. One of her friends called 911 and Plaintiff initially was taken to Sibley Hospital and later admitted to Psychiatric Institute of Washington (PIW) in Washington, D.C.

33. During her stay in the hospital, Defendant Williams was on the approved call log but some of the staff noticed and witnessed their inappropriate conversations (i.e. that they were not "teacher-student" in nature) and immediately removed him from her approved callers list, effectively stopping the communication between the parties to help Plaintiff's mental health and stability.

34. Plaintiff missed the first day of school as a result of her admission to PIW. However, she was forced to return to Defendant Williams' classes after her discharge. Defendant Williams used his position of authority and persuaded Plaintiff to

participate in inappropriate sexual activities while on and off Duke Ellington's premises.

35. Defendant Williams would take Plaintiff on "dates" to a local restaurant and pub located in Arlington, VA.

36. Defendant Williams also transported Plaintiff to his brother's home in VA for the purpose of having sexual relations with Plaintiff.

37. During this time period, Defendant Williams was ineffectively supervised and ineffectively monitored in accordance with DESAP and DCPS policies.

38. A parent of a student informed Defendant Yates that Plaintiff and Defendant Williams were involved in a sexual relationship.

39. Additionally, other staff members have revealed that they also heard of an inappropriate relationship between Defendant Williams and Plaintiff which was subsequently reported to Defendant Yates.

40. That, Defendant Yates shared this information with Father Payne of Duke Ellington on November 15, 2004. The next day, November 16, 2014, Father Payne filed a complaint with the DC police (MPD) regarding the inappropriate relationship. *See* Exhibit A.

41. As a result of the police being notified, Defendant Williams was placed on Administrative Leave by Defendant Yates.

42. A male arrived at Plaintiff's home, who questioned her in front of her parents and brother, and as a result of being "in love" and embarrassed in front of her family,

9

Plaintiff felt compelled to deny the allegations. It is currently unclear who sent this individual to the home of the Plaintiff.

43. Defendants District, DCPS, and DESAP, records related to the events alleged have been requested from all Defendants; however, all have stated they have no records regarding any investigation.

44. It has since been reported that Defendant Williams was placed on Administrative Leave on more than one occasion by DESAP for the same or similar behavior.

45. Soon thereafter, Defendant Williams instructed Plaintiff to immediately delete all phone, email, and text messages.

46. During this time, Defendant Williams forced Plaintiff to communicate with him *via* pay phone to protect Defendant Williams during the alleged investigation.

47. Once the other students discovered the Defendant Williams was on Administrative Leave, the students began to harass Plaintiff and made her life at school unbearable.

48. The harassment intensified to the point that Plaintiff emailed her poetry teacher, Kenneth Carroll, and begged him to stop his "pet students" from harassing her (e.g., threatening to jump her, overall physical harm), to no avail.

49. Unfortunately, the hostile classroom environment remained for Plaintiff in each of her arts block classes until her graduation.

50. Plaintiff was never interviewed by Defendant Duke Ellington about the sexual relationship with Defendant Williams.

51. Plaintiff is not aware if Defendant Duke Ellington ever interviewed any teachers or any of her friends about the sexual allegations with Defendant Williams.

10

52. There is no evidence that any formal investigation pursuant to Title IX was ever conducted by DESAP. *It is believed that an internal DESAP review was conducted that resulted in an "inconclusive" decision – with no interview of the Plaintiff, her friends, or other faculty who had relevant information.

53. Following the alleged investigation, Plaintiff was not removed from Defendant Williams' classes, but was forced to maintain classes with her abuser – this was a direct violation of Title IX.  His harassment continued until Plaintiff was a junior in college.

54. Pursuant to D.C. Code Ann. § 4-1321.02, **a mandated reporter** is someone "who knows or has reasonable cause to suspect that a child known to him or her in his or her professional or official capacity has been or is in immediate danger of being a mentally or physically abused or neglected child."

55. Even though this abuse was reported to DESAP and DC officials, Defendant Williams was never completely and thoroughly investigated pursuant to the Anti-Sexual Abuse Act of 1994 (D.C. Law 10-257; D.C. Official Code § 22-3020.51(4)).

56. Sometime in 2020, Duke Ellington students Shanya Taylor and Makayla Hyatt started an online petition intended to expose and bring awareness to Duke Ellington's policies and behaviors that created or encouraged a hostile environment with a prevalence of sexual abuse. *See* https://www.change.org/p/daaa-we-need-justice-for-victims-of-sexual-assault-at-duke-ellington-school-of-arts?redirect=false

57. A number of students detailed their own sexual abuse and harassment and identified Duke Ellington and key faculty members as being influential in the coverups of sexual assaults on the aforementioned petition.

58. During the pattern of grooming and the escalation of Defendant Williams' sexual advances, Plaintiff, as a minor, did not understand the severity of Defendant Williams' behavior, felt helpless and believed that allowing Defendant Williams' sexual advances was in her best interests.

59. Defendant Williams' exploited the opportunities created by Defendants DCPS and Duke Ellington to complete his grooming, sexual harassment, and sexual abuse of Plaintiff, some of which occurred on school grounds. Each of these acts were in direct violation of DESAP policy, in direct violation of DC Law, and direct violation of Title IX.

60. Defendants DCPS and Duke Ellington are responsible for providing public education to minor female students, including Plaintiff, through (a) oversight and supervision of all school functions, school property and school student programs; and (b) the hiring, supervision, management, assignment, control and regulation of individuals who serve as staff members, including but not limited to school teachers and educators, as well as the review and supervision of curricula developed by the District of Columbia, schools and teachers as well as those who contract with the District.

61. Pursuant to the contractual partnership between DESAP and DCPS they are collectively responsible for all policies and procedures within the school. This

12

charge and responsibility includes supervision and discipline of teachers, educators, contractors, and administrators, including but not limited to, Defendant Williams.

62. Plaintiff's sexual abuse occurred while Plaintiff was under the control and direction of Defendant Williams, in areas of the school to which Defendant Williams had access by virtue of his employment. Defendant Williams was bound by the policies of DCPS pursuant to the contract that includes those who contract with the District.

63. Duke Ellington fostered a culture where teachers sexually groomed and abused students over the years. See the attached police reports. *See* Exhibit B.

64. In 2020, Plaintiff and former Principal Yates had Facebook exchanges where Yates admitted and acknowledged Defendant Williams had been a problem in 2004 but due to confidentially she couldn't give all the details.

65. Despite allegations of Defendant Williams' inappropriate relationship with Plaintiff, Defendant Duke Ellington nevertheless: (a) permitted Defendant Williams to have unsupervised access to various rooms and areas of the school; (b) permitted Defendant Williams to have unsupervised contact with students after school hours; (c) did not competently investigate the complaints of students and others about Defendant Williams' conduct; (d) did not disclose to the students, including Plaintiff, the concerns about Defendant Williams; (e) failed to comply with the duties set forth in District policies and procedures and federal law; (f) failed to remove Plaintiff from Defendant Williams' classes after being made aware of Plaintiff's sexual abuse by Defendant Williams; (g) were deliberately indifferent to the safety, security and well-being of students at Duke Ellington, including but not limited to

Plaintiff; (j) prevented students, including Plaintiff, from receiving an education without a condition of such education being sexual harassment, sexual grooming and sexual abuse; and, (k) promoted school policies that fostered a climate to flourish where innocent students, including Plaintiff, were victims of sexual abuse.

## COUNT I
### (Title IX, 20 U.S.C. §1681, et seq. - All Defendants)

66. Plaintiff incorporates her previous allegations as if fully rewritten herein.

67. Title IX of the Education Amendments of 1972 requires that "No person...shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance..."

68. At least by November 15, 2004, Defendants District of Columbia, DCPS, Duke Ellington and Yates (and subsequently Pullens) possessed actual notice of liability under Title IX for teacher-on-student sexual harassment, sexual grooming, sexual discrimination, and sexual abuse.

69. At least by November 15, 2004, Defendants District of Columbia, DCPS, Duke Ellington and Yates (and subsequently Pullens) possessed actual knowledge of Williams' sexual harassment, sexual grooming, sexual discrimination and sexual abuse of students.

70. At least by November 15, 2004, Defendants District of Columbia, DCPS, Duke Ellington and Yates (and subsequently Pullens) possessed actual knowledge that Williams had a high potential to sexually abuse female students.

71. Plaintiff in 2003-2005, was subjected to discrimination in her education at Duke Ellington based on her gender in that she suffered teacher-on-student sexual harassment, sexual grooming and sexual abuse as a condition of her receipt of education at Duke Ellington.

72. Duke Ellington failed to take appropriate corrective action, thereby acting with deliberate indifference to the rights and safety of Plaintiff.

73. Defendants possessed actual knowledge of the allegations of Defendant Williams' sexual harassment, sexual grooming, sexual discrimination, and sexual abuse of students.

74. Defendants District of Columbia, DCPS, Duke Ellington Yates (and subsequently Pullens) possessed actual knowledge that Defendant Williams had ample opportunity to sexually abuse students when there was a noted lack of other faculty present in remote areas of the school or during events after school hours.

75. Plaintiff between 2003-2005, was subjected to discrimination in her education at Duke Ellington based on her gender in that she suffered teacher-on-student sexual harassment, sexual grooming, sexual abuse, and inappropriate contact as a condition of her receipt of an education at Duke Ellington.

76. Defendants District of Columbia, DCPS, Duke Ellington and Yates (and subsequently Pullens) failed to take appropriate corrective action, thereby acting with deliberate indifference to the rights and safety of Plaintiff in one or more of the following ways: (a) failing to report teacher-on-student sexual harassment, sexual grooming and sexual abuse to appropriate authorities; (b)

failing to cure or even attempt to cure obvious and known risks to minor female students at Duke Ellington placed under Defendant Williams' supervision and authority; (c) failing to communicate any precautions, directives or educational materials that might be utilized between parent and child to identify inappropriate conduct that occurred between any student and adult, whether generally or specifically in relation to Defendant Williams; and, (d) allowing Defendant Williams to have unsupervised contact with minor female students, including Plaintiff, without conducting, documenting and concluding a competent investigation into the allegations and specific facts brought to light prior to that time.

77. The deliberate indifference, actions and omissions described above caused Plaintiff to suffer criminal sexual harassment and abuse by Defendant Williams.

78. Title IX requires Defendants DCPS, and Duke Ellington to provide educational opportunity on an equal basis to all students regardless of their gender.

79. Defendants DCPS failed to comply with Title IX in that despite prior allegations of misconduct, Defendants continued to allow Defendant Williams unsupervised access to minor female students and access to certain rooms and areas where Defendant Williams had the privacy to carry out the sexual abuse of minor female students, including Plaintiff.

80. 20 U.S.C. § 1981 affords Plaintiff a civil cause of action for damages. 42 U.S.C. § 1988 identifies damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 20 U.S.C. § 1981.

16

81. As a direct and proximate result of the conduct of Defendants District of Columbia, DCPS, Duke Ellington and Pullens as described herein, Plaintiff has sustained severe and permanent bodily injury, sickness and/or disease, including but not limited to sleep disturbance, nightmares, depression, posttraumatic stress disorder, fatigue, social anxiety, anger, panic attacks, mood disorder, and as a result thereof she has and will continue to experience: (a) physical and mental pain and suffering; (b) emotional distress; (c) loss of a normal life; (d) medical and counseling expenses; and (e) lost wages.

WHEREFORE, Plaintiff, Jane Doe, sues the Defendants for damages in the amount of n Million Dollars ($10,000,000.00) plus pre-judgment and post-judgment interest to the tent allowed by law, plus costs and interest, and demands trial by jury of all issues so iable as of right by jury.

## COUNT II
### (42 U.S.C. § 1983- Pullens & Yates)

82. Plaintiff incorporates her previous allegations as if fully rewritten herein.

83. Duke Ellington is a quasi-governmental entity due to its partnership with DCPS (an agency with the District of Columbia) that has a governing interest in its supervisory board.

84. Duke Ellington exists as a public school that has a majority of its funding from the District of Columbia through contracts with DCPS that govern its management and administration.

85. Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code § 22-3020.51(4)) governed the actions of all educational entities in the District of Columbia including those who contract with the District of Columbia or its agencies until the passage of the School Safety Omnibus Amendment Act of 2018. D.C. ACT 22-624, enacted 2019 and effective School Year 2020. Defendant Yates and subsequently Pullens failed to take any appropriate action to remove the Plaintiff from the scope of immediate danger and forced her to remain in the harmful cone of danger with her alleged abuser in direct violation of these laws.

86. Pursuant to law, all teachers and staff of Duke Ellington are required to act pertaining to the safety and security of students. Administration is charged with ensuring that all faculty comply with DCPS policies, regulations, and school handbook policy.

87. Defendants Pullens and Yates were acting under the color of these statutes and policies in their capacity as an official(s) with the authority to take action against Defendant Williams.

88. During Plaintiff's abuse by Defendant Williams, Defendants Pullens and Yates knew or reasonably should have known (based on the allegations they had received) that Defendant Williams exhibited dangerous propensities and was a threat of harm to students, including Plaintiff.

89. Upon information and belief, Defendants Pullens and Yates were uniquely aware of Defendant Williams' propensity to commit acts of sexual harassment, sexual

grooming, sexual abuse and/or misconduct against Plaintiff.   Therefore, Defendant Williams' continued misconduct – and the harm that was likely to result from that misconduct – was foreseeable.

90. Defendants Pullens and Yates were uniquely aware that Defendant Williams had used Duke Ellington's property to perpetuate acts of sexual harassment, sexual grooming, sexual abuse and misconduct against students to which Defendant Williams had access by and through his employment with the school.

91. Defendants Yates and Pullens turned a blind eye to allegations of sexual harassment, sexual grooming, and sexual abuse, along with ignoring complaints and failing to respond to allegations of misconduct in accordance with the law, Title IX, and DCPS policy, in addition to acting with deliberate indifference to the rights of minor female students, including Plaintiff.

92. Plaintiff was deprived of her constitutional liberty and equal protection interests under the Fourteenth Amendment by Defendants Yates' and Pullens' failure to restrict, reduce, or report Defendant Williams' actions that fostered a hostile educational climate where minor female students, including Plaintiff, were left vulnerable and subject to sexual abuse, sexual grooming and sexual harassment by Defendant Williams, an agent, servant and/or employee of Duke Ellington through the contracts with DCPS. *It is noted that Father Payne did make a report to DC Metropolitan Police Department on November 15, 2004.

93. The conduct of Defendants Yates and Pullens was arbitrary and offensive, shocking the conscience and interfering with minor female students' rights and

liberties granted by the constitution and protected by law, including the Plaintiff's.

94. 42 U.S.C. § 1983 affords Plaintiff a civil cause of action for damages. 42 U.S.C. § 1988 identifies damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 42 USC § 1983.

95. As a direct and proximate result of the conduct of Defendants Yates and Pullens as described herein, Plaintiff has sustained severe and permanent bodily injury, sickness and/or disease, including but not limited to sleep disturbance, nightmares, depression, post-traumatic stress disorder, fatigue, social anxiety, anger, panic attacks and as a result thereof she has and will continue to experience to experience: (a) physical and mental pain and suffering; (b) emotional distress; (c) loss of a normal life; (d) medical and counseling expenses; and (e) lost wages.

96. The conduct of Defendants Yates and Pullens constituted a violation of trust or confidence, showing complete indifference to or conscious disregard for the safety and well-being of Plaintiff and other minor female students.

97. Justice and the public good require an award of punitive or exemplary damages in such sum which will serve to punish Defendants Yates and Pullens and to deter similar conduct by others.

**WHEREFORE**, Plaintiff, Jane Doe, sues the Defendants for damages in the amount of en Million Dollars ($10,000,000.00) plus pre-judgment and post-judgment interest to the

extent allowed by law, plus costs and interest, and demands trial by jury of all issues so triable as of right by jury.

## COUNT III
### (42 U.S.C § 1983- Duke Ellington)

98. Plaintiff incorporates her previous allegations as if fully rewritten herein.

99. Duke Ellington is a quasi-governmental entity due to its partnership with the DCPS (an agency with the District of Columbia) that has a governing interest in its supervisory board.

100. Duke Ellington exists as a public school that has a majority of its funding from the District of Columbia through contracts with DCPS that govern its management and administration.

101. Upon information and belief, Duke Ellington receives approximately 75% of its funding via sole source contracts with DCPS. According to the Kennedy Center – a partner of DESAP – "the school is managed and operated by The Kennedy Center, George Washington University and the Ellington Fund under a contract with District of Columbia Public Schools (DCPS) titled the Duke Ellington School of the Arts Project."

102. Duke Ellington established, through both action and inaction, a widespread policy, practice or custom of allowing sexual harassment, sexual grooming, sexual abuse and misconduct to continue to occur without corrective action.

103. Such policy, practice or custom includes, but is not limited to: (a) failing to report teacher-on-student sexual harassment, sexual grooming and sexual abuse

21