## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JANE DOE** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **CASE NO.: 1:22-cv-00811-JEB** |
| **v.** | * | |
| | * | |
| **DUKE ELLINGTON SCHOOL OF THE ARTS** | * | |
| **PROJECT,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

---

### PLAINTIFF'S OPPOSITION TO DEFENDANT MITZI YATES' MOTION TO DISMISS

---

Plaintiff Jane Doe, pursuant to Fed. Rule Civ. Pro. 12 and 56, by counsel, opposes Defendant's Motion to Dismiss.  The grounds for this Opposition are set forth in the Memorandum of Law filed in support of this Opposition.

WHEREFORE Plaintiff prays for the following relief:

1.  As set forth in the Plaintiff's affixed Supporting Memorandum, deny the Motion to Dismiss the Plaintiff's Complaint.

2. Any other relief this Court deems just and appropriate.

Respectfully submitted,

_/s/_*Dawn Jackson*____
Dawn Jackson, Esq. #485118
Dawn Jackson and Associates
1300 Caraway Court #100
Largo, MD 20774
(301) 883-0800
DJackson@jacksonassociateslawfirm.com

_/s/ Howard Haley_
Howard Haley, Esq. #999376
The Haley Firm, PC
7600 Georgia Ave, NW #416

1

Washington, DC 20012
(202)810-6329
Haleyfirm@gmail.com

**<u>Certificate of Service</u>**

The undersigned hereby certifies that on this 4TH day of August 2022, a copy of

Plaintiff's Opposition, with Supporting Memorandum and exhibits, to Defendant Mitzi

Yate's Motion to Dismiss was served electronically to counsels of record.

<u>/s/Dawn Jackson</u>
Dawn Jackson, Esq. #485118

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JANE DOE | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | CASE NO.: 1:22-cv-00811-JEB |
| v. | * | |
| | * | |
| DUKE ELLINGTON SCHOOL OF THE ARTS | * | |
| PROJECT, *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Jane Doe was a former student at Duke Ellington school of the Arts and was sexually assaulted and harassed by Defendant Mark Williams (hereinafter "Williams") who was her teacher 2003-2005. Her abuse began when she was a minor (16) and continued beyond her graduation.

Duke Ellington School of the Arts (hereinafter "Duke Ellington" or "DESAP") is managed and operated by its own board of directors and comprised of the DC Public Schools (DCPS), the Ellington Fund, the John F. Kennedy Center for the performing Arts (The Kennedy Center) and The George Washington University (GWU). The board includes a member from each partner. The Board governs all operations of DESAP pursuant to the sole source contracts administered by DCPS. DESAP is a public private partnership that includes the District of Columbia Public School System (hereinafter "DCPS"), an agent of Defendant District of Columbia (hereinafter "DC" or "the District"). All the Defendants fall under the purview of the laws and policies of the United States, the District of Columbia, and DCPS. Defendant Mitzi Yates (hereinafter "Yates") was a principal of DESAP. Yates was a mandatory reporter under DC Law pursuant to Title IX.

The Plaintiff sufficiently pled pertinent details of her abuses and specific causes of action that support her claims. In response, Defendant Yates has filed a Motion to Dismiss alleging that the burden of certain claims have not been met.

Accordingly, Plaintiff respectfully requests this court deny Defendant's Motion to Dismiss and sets forth grounds for doing so in the present Response. In the alternative, Plaintiff requests that court stay it's ruling on Defendants' Motion to Dismiss pursuant to D.C. Super. Ct. R. Civ. P. 56 (d) until after discovery can be obtained. (*While Defendant has filed a motion to dismiss pursuant to Rule 12, (b) (6); the Plaintiff is aware that the Court can consider it as a motion for judgment pursuant to Rule 56 (d).) Plaintiff has attached a Rule 56(d) Affidavit in support of her Opposition. *See* Exhibit 1. The Plaintiff offers the following in support thereof.

Plaintiff contends that the Defendant had actual knowledge of the alleged first-degree sexual abuse of the Plaintiff due to the parent's report of a sexual relationship between a teacher and a student directly to Defendant Yates.  Further Father Payne filed a police report that identifies an ongoing sexual relationship between a teacher and minor student was occurring. The Plaintiff's complaint stated that the harassment continued well after the report was made to DC MPD.

The common law claims of the Plaintiff are not extinguished because the Plaintiff filed the present complaint within 1 year of her learning that she had been a victim of child sexual abuse.  Plaintiff became aware that she was an abuse victim when it was revealed that what had happened to her was not a loving relationship but an abusive one.  Plaintiff was a minor at the time the report and entitled to the protections she was afforded pursuant to Title IX and current DC Law.

4

Lastly, the Plaintiff has advanced sufficient factual allegations that a trier of fact could draw a reasonable inference that the defendants are liable for the misconduct alleged.

## FACTS

Duke Ellington School of the Arts (hereinafter "Duke Ellington" or "DESAP") is managed and operated by its own board of directors and comprised of the DC Public Schools (DCPS), the Ellington Fund, the John F. Kennedy Center for the performing Arts (The Kennedy Center) and The George Washington University (GWU). The board includes a member from each partner.  The Board governs all operations of DESAP pursuant to the sole source contracts administered by DCPS. DESAP is a public private partnership that includes the District of Columbia Public School System (hereinafter "DCPS"), an agent of Defendant District of Columbia (hereinafter "DC" or "the District"). All the Defendants fall under the purview of the laws and policies of the United States, the District of Columbia, and DCPS. (Complaint 1-7)

In August of 2004, plaintiff was a sixteen (16) year old student at Duke Ellington school of the Arts (hereinafter "Duke Ellington"). Defendant Williams was employed as a teacher and was identified as the Literary & Media Arts Chair at Duke Ellington. (*Id.* @ 20). Defendant Williams asked the Plaintiff, "Will I have any angry parents to deal with?" as a condition of her acceptance to the department. (Complaint @22) Plaintiff joined the Literary Media & Communications Department in the spring of her junior year. (Complaint @21) Defendant Williams began the grooming process.  Defendant Williams met with Plaintiff alone at school for private summer sessions to bring her current with his department curriculum. (Complaint @23) Plaintiff was unsure if the meetings were appropriate but understood it was a requirement for her to graduate. (Complaint @24)

Once the Plaintiff started her junior year, she continued to receive special attention

and additional assignments from Defendant Williams.  There were meetings in his office after school as well. (Complaint @25)    Defendant Williams began to speak and write about personal matters to Plaintiff under the pretense it was consistent with her independent study/ "schoolwork". (Complaint @26) Defendant Williams used his position as teacher to have the Plaintiff try on outfits for a theatrical production privately in his office at Duke Ellington.  Defendant Williams was the only faculty present in direct violation of DCPS policy. (Complaint @27)

       In late spring of the Plaintiff's junior year [2004] Defendant Williams sent explicit writings regarding his personal experiences and fantasies. (Complaint @28) The summer before the Plaintiff's senior year [2004] there were regular extensive private phone conversations between Defendant Williams and the Plaintiff late into the night while having phone sex (sometimes until 4:00 am). These inappropriate calls were in direct violation of DCPS policy. (Complaint @29)

       Plaintiff started to drink heavily because she was upset and confused about the relationship with Defendant Williams. She was inconsolable about her feelings and confused because she believed that she was "in love" with her teacher who was married. (Complaint @30) Defendant Williams would provide strong alcoholic drinks (mostly gin and tonics) to the Plaintiff at his home. (Complaint @31)

       At one point, Plaintiff became suicidal. One of her friends called 911 and Plaintiff initially was taken to Sibley Hospital and later admitted to Psychiatric Institute of Washington (PIW) in Washington, D.C.  (Complaint @32) During her stay in the hospital, Defendant Williams was on the approved call log but some of the staff noticed and witnessed their inappropriate conversations (i.e. that they were not "teacher-student" in nature) and immediately removed him from her approved callers list, effectively stopping the communication between the parties to help Plaintiff's mental health and stability.

(Complaint @33)

     Plaintiff missed the first day of school as a result of her admission to PIW.  However, she was forced to return to Defendant Williams' classes after her discharge. Defendant Williams used his position of authority and persuaded Plaintiff to participate in inappropriate sexual activities while on and off Duke Ellington's premises. (Complaint @34) Defendant Williams would take Plaintiff on "dates" to a local restaurant and pub located in Arlington, VA. (Complaint @35) Defendant Williams also transported Plaintiff to his brother's home in VA for the purpose of having sexual relations with Plaintiff. (Complaint @36) Defendant Williams was ineffectively supervised and ineffectively monitored in accordance with DESAP and DCPS policies. (Complaint @37)

     Plaintiff has alleged that Defendant Yates was informed of the existence of a sexual relationship in violation of Title IX and DC Law was occurring between the Plaintiff and Defendant Williams.  (Complaint @38) Defendant Yates shared this information with Father Payne of Duke Ellington on November 15, 2004. The next day, November 16, 2014, Father Payne filed a complaint with the DC police (MPD) regarding the inappropriate relationship. (Complaint @40) Defendant Yates held the position of school principal. (Complaint @14) At DESAP, the school principal is an appropriate official with the authority to take corrective measures.  Plaintiff has alleged that other staff members were aware of the relationship and the inappropriate activities alleged by the Plaintiff. (Complaint @39).  Plaintiff has alleged that Defendant District was informed of the allegations of abuse by a mandatory reporter of DESAP – Father Payne – who filed a police report. (Complaint @40)

     Pursuant to the DCPS published policy all teachers, staff, and officers of any public school are designated as "Mandatory Reporters" (Complaint @ 106-108) In the instant case the Plaintiff requested records regarding the police report and Defendants District and

DCPS responded that no report existed.  (Complaint @43) Plaintiff persisted and one was

discovered to exist and was submitted to the Court. The Police report indicates the place,

time, and manner of crime against the Plaintiff. The police report indicates that the Plaintiff

was subjected to First Degree Sexual Abuse by her teacher. (Police Report @ pg1 box 13)

  Defendant Williams was placed on temporary administrative leave by Defendant

Yates after the report was made to DC MPD. (Complaint @41) Plaintiff later learned that

Defendant Williams had been placed on multiple periods of Administrative Leave.

(Complaint @ 44) Soon thereafter, Defendant Williams instructed Plaintiff to immediately

delete all phone, email, and text messages. (Complaint @45) During this time, Defendant

Williams forced Plaintiff to communicate with him *via* pay phone to protect Defendant

Williams during the alleged investigation (Complaint @46)

  Plaintiff was subjected to harassment (verbal, mental, and physical threats of bodily

harm, etc.) from other students as a result of the temporary suspension of Defendant

Williams. (Complaint @ 47-49; Affidavit of Carroll[1]) Teachers and staff were aware of the

harassment endured by the Plaintiff from other students.  (Complaint @47-49; Affidavit of

Carroll) After Defendant Williams returned to DESAP, Plaintiff was forced to remain in the

classes with him until her graduation.  Defendant Yates did not move Plaintiff to a different

classroom; as a result, Plaintiff was required to be in the classroom with her abuser on a

daily basis.  Unfortunately, the hostile classroom environment remained for Plaintiff in

each of her arts block classes until her graduation. (Complaint @49) Forcing her to attend

classes under the control of her abuser continued the harm she suffered because she was

continually being harassed.  (Complaint @ 40, 53) Defendant Williams' sexual abuse of the

---

[1] Affidavits of Kenneth Carroll, Molly McCardle, and Jane Doe were DocuSigned for expediency; however, if the Court does not accept DocuSigned documents, Plaintiff will supplement with documents that include original signatures.

Plaintiff continued until she was a junior in college – well beyond November 15, 2004. (Complaint @53)

The Plaintiff was never interviewed by Duke Ellington or a counselor of DCPS regarding the reported relationship with Defendant Williams. (Complaint @50) Plaintiff is not aware if any teachers were interviewed by Duke Ellington. (Complaint @51) No evidence of a formal review pursuant to Title IX was ever provided to the Plaintiff. (Complaint @52) *It is believed a cursory internal review by DESAP was conducted that resulted in an "inconclusive" decision – with no interview of the Plaintiff, her friends, or other faculty who had relevant information. (Complaint @52)

Even though this abuse was reported to DESAP and DC officials, Defendant Williams was never completely and thoroughly investigated pursuant to the Anti-Sexual Abuse Act of 1994 (D.C. Law 10-257; D.C. Official Code § 22-3020.51(4)). (Complaint @55) During the pattern of grooming and the escalation of Defendant Williams' sexual advances, Plaintiff, as a minor, did not understand the severity of Defendant Williams' behavior, felt helpless and believed that allowing Defendant Williams' sexual advances was in her best interests. (Complaint @58) Defendant Williams exploited the opportunities created by Defendants DCPS and Duke Ellington to complete his grooming, sexual harassment, and sexual abuse of Plaintiff, some of which occurred on school grounds.  (Complaint @59)

Defendants DCPS and Duke Ellington are responsible for providing public education to minor female students, including Plaintiff, through (a) oversight and supervision of all school functions, school property and school student programs; and (b) the hiring, supervision, management, assignment, control and regulation of individuals who serve as staff members, including but not limited to school teachers and educators, as well as the review and supervision of curricula developed by the District of Columbia, schools and teachers as well as those who contract with the District.  Pursuant to the contractual

partnership between DESAP and DCPS they are collectively responsible for all policies and procedures within the school. This charge and responsibility include supervision and discipline of teachers, educators, contractors, and administrators, including but not limited to, Defendant Williams. Plaintiff's sexual abuse occurred while Plaintiff was under the control and direction of Defendant Williams, in areas of the school to which Defendant Williams had access by virtue of his employment.  Defendant Williams was bound by the policies of DCPS pursuant to the contract that includes those who contract with the District. Duke Ellington fostered a culture where teachers sexually groomed and abused students over the years. (Complaint @ 59-63)

Plaintiff suffered teacher-on-student sexual harassment, sexual abuse, sexual grooming, and inappropriate contact as a condition of her receipt of an education at Duke Ellington. (Complaint @ 75) Defendant Duke Ellington failed to cure obvious and known risks to minor female students they placed under Defendant Williams supervision and authority. Defendant Duke Ellington failed to communicate any precautions, directives, or educational materials that might be utilized between parent and child to identify inappropriate conduct that occurred between any student and an adult whether generally or specifically about Defendant Williams. (Complaint @ 76) Defendant Duke Ellington allowed Defendant Williams to have unsupervised contact with minor female students including Plaintiff, without conducting, documenting, and concluding a competent investigation into the allegations and specific facts brought to light prior to that time. (*Id.*)

Despite allegations of Defendant Williams' inappropriate relationship with Plaintiff, Defendant Duke Ellington nevertheless: (a) permitted Defendant Williams to have unsupervised access to various rooms and areas of the school; (b) permitted Defendant Williams to have unsupervised contact with students after school hours; (c) did not

competently investigate the complaints of students and others about Defendant Williams'
conduct; (d) did not disclose to the students, including Plaintiff, the concerns about
Defendant Williams; (e) failed to comply with the duties set forth in District policies and
procedures and federal law; (f) failed to remove Plaintiff from Defendant Williams' classes
after being made aware of Plaintiff's sexual abuse by Defendant Williams; (g) were
deliberately indifferent to the safety, security and well-being of students at Duke Ellington,
including but not limited to Plaintiff; (j) prevented students, including Plaintiff, from
receiving an education without a condition of such education being sexual harassment,
sexual grooming and sexual abuse; and, (k) promoted school policies that fostered a
climate to flourish where innocent students, including Plaintiff, were victims of sexual
abuse. (Complaint @65)

   In 2020, Plaintiff and former Principal Yates had Facebook exchanges where Yates
admitted and acknowledged Defendant Williams had been a problem in 2004 but due to
confidentially, she couldn't give all the details. (Complaint @64)

   Defendants DCPS and Duke Ellington owed a duty to the public and Plaintiff to train
its employees, servants and/or agents to identify when an inappropriate sexual
relationship with a minor female student is ongoing or is potentially sought and report it
accordingly. (Complaint @146) It was foreseeable to Defendants Duke Ellington and DCPS,
that Defendant Williams' conduct would cause Plaintiff harm.  Defendants continued to
place Plaintiff in Defendant Williams' classes; therefore, causing more harm in direct
violation of Title IX.  As a direct, foreseeable and proximate result of the negligence of
Defendants Duke Ellington, DCPS, Yates, Plaintiff Jane Doe sustained serious injuries,

suffered emotional harm and torment and the loss of the capacity for the enjoyment of life, and continues to receive psychological and medical treatment. (Complaint @148-149)

Defendants DCPS and Duke Ellington, were required to comply with Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code § 22-3020.51(4)) and subsequently, School Safety Omnibus Amendment Act of 2018. D.C. ACT 22-624, enacted 2019 and effective School Year 2020. It appears that the Defendant Duke Ellington employed a new Title IX Coordinator who has implemented new training and education of faculty, staff, and students after reports surfaced in 2022. (Complaint @142)

### STANDARD OF REVIEW

To withstand a challenge under Rule 12(b)(6), "a complaint must set forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bowman v. Iddon*, 848 F.3d. 1034, 1039 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court reviewing a motion to dismiss under Rule12(b)(6) must "accept [ ] as true all of the factual allegations contained in the complaint and draw [ ] all inferences in favor of nonmoving party." *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014) (quotation marks omitted) Moreover, "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advance by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC v. Graham*, 798 F. 3d 1119, 1129 (D.C. Cir. 2015) quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  In the present matter, the Plaintiff has advanced sufficient factual allegations that a trier of fact could draw a reasonable inference that the defendants are liable for the misconduct alleged. Further, Defendant Yates has accepted as true the

factual allegations set forth in Plaintiff's Complaint. (Defendant Yates Motion to Dismiss @ FN1)

Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987). "The Federal Rules of Civil Procedure require only that the pleadings give a defendant notice of the nature of the claims against him." *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1127 (10th Cir.1998).

"Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry". *Murrell v. School Dist. No. 1, Denver, Colorado*, 186 F. 3d 1238, (10th Cir. 1999) In the present case, the Defendants were alerted to a teacher-on-student sexual relationship that violates DC Laws, DCPS Policy, DESAP Policy, and Title IX.  The Plaintiff has alleged that an appropriate person was informed; however, the Defendant disputes having actual knowledge.  This question requires a fact-based inquiry and cannot be resolved at this stage of the litigation.

## **ARGUMENT**
### A.  **The Plaintiff's Claims were Presented Within the Statute of Limitations**

The Sexual Abuse Statute of Limitations Amendment Act of 2018, amended the statute of limitations for civil actions "arising out of sexual abuse that occurred while the victim was less than 35 years of age." *See* Sexual Abuse Statute of Limitations Amendment Act of 2018, D.C. Law 22-311, 66 D.C. Reg. 1398 (Feb. 1, 2019). The statute does not define "accrues," and the task of identifying the moment of accrual has been left to the courts. *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1198 (D.C.1984).

The Plaintiff was a minor at the time she was subjected to the sexual abuse by Defendant Williams while he was employed by Defendant DESAP.  The District enacted 12-301 (a) (11) which extended the statute of limitations.  It states: "for the recovery of damages arising out of sexual abuse that occurred while the victim was 35 years of age or older—5 years, or 5 years from when the victim knew, or reasonably should have known, of any act constituting sexual abuse, whichever is later." The Plaintiff discovered that what had happened to her was a violation of law in the fall of 2021. The Plaintiff filed her complaint within 1 year of that discovery.  The Plaintiff was under 35 years of age at the time her complaint was filed.

The DC Court of Appeals has concluded that Title IX claims are more analogous to claims under the D.C. Human Rights Act, D.C. Code § 2-1402.01 *et seq.* "...This Court's "task is to 'borrow' the most suitable statute or other rule of timeliness from . . . the most closely analogous statute of limitations under state law," *DelCostello*, 462 U.S. at 158. For the reasons discussed above, the DCHRA is the most closely analogous statute of limitations for Doe's Title IX claims. Doe accordingly had one year from the time her claims accrued to assert those claims. *See* D.C. Code § 2-1403.16(a) ("A private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the *unlawful discriminatory act*" … (emphasis added) …The Court thus concludes that a one-year statute of limitations governs Doe's Title IX claims and that a three-year statute of limitations governs her D.C. common-law claims." *Doe v. Howard University, --- F.Supp.3d ---- (2022), 2022 WL 898862 (D.C. 2022)*

"Statutes of limitations in the District begin to run "from the time the right to maintain the action accrues." D.C. Code § 12-301 As the D.C. Court of Appeals has explained, "A cause of action generally accrues, and triggers the commencement of the applicable statute of limitations period, at the time the injury occurs." *Radbod v. Moghim*, ___ A.3d ___,

2022 WL. 480733, at 6 (D.C. 2022). But when the relationship between the fact of the injury and the tortious conduct is obscure at the time of the injury, "a cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989). *Id.*

> "The plaintiffs' state of mind is the paramount factor in this court's definition of the relevant injury for purposes of the discovery rule. We have held that, under the discovery rule, "[t]he key issue is [the plaintiff's] knowledge of some injury, its cause, and related wrongdoing." *Knight v. Furlow,* 553 A.2d 1232, 1236 (D.C.1989), citing *Bussineau, supra,* 518 A.2d at 425. Our cases show that we tend to look askance at trial court rulings that purport to decide such an issue on motions for summary judgment... We held that "this determination cannot be made in a summary manner.... [Whether] appellant knew or should have known of the alleged defects for more than three years at the time the complaint was filed ... is a question to be decided by the trier of fact." *Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192 (D.C.1984)" *Colbert v. Georgetown University*, 641 A.2d 469, 473 (D.C.1994) (en banc).

The DC Court of Appeals in *Cevenini v. Archbishop of Washington,* 707 A. 2d 768 9 (D.C. 1998) provides guidance on when inquiry notice can be attributed to the Plaintiff. This court has repeatedly held that a claim accrues when the plaintiff knows of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing. Under both the general rule of claim accrual and the discovery rule exception, the statute of limitations begins to run when a plaintiff either has actual knowledge of a cause of action or is charged with knowledge of that cause of action. What constitutes the accrual of a cause of action is a question of law; the actual date of accrual, however, is a question of fact. (Citing *Diamond v. Davis*, supra, 680 A.2d at 372 (D.C. 1996)) Plaintiff contends that she was unaware of any injury or harm until she saw the news reports of other victims.

The Maryland Court of Appeals has also determined when cause of actions accrue, "...[w]e noted that a growing number of our sister states had recognized that, in many cases not involving professional malpractice, "plaintiffs may, in appropriate circumstances, `be

blamelessly ignorant' of the fact that a tort has occurred and thus, ought not be charged with slumbering on rights they were unable to ascertain." *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981)

In the present case, the Plaintiff was a minor when she was subjected to the harms identified in her complaint. She was unaware of a right to a cause of action until fall 2021 when news reports revealed the rape of other students and descriptions of Defendant Williams' sexual misconduct as reported by others who experienced similar events at Duke Ellington.  The fact that she was unaware of her injuries and harm until fall of 2021 and the recent statute changes, distinguish this case from the available case law. (See Exhibit 3 - Affidavit of Jane Doe and Exhibit 4 - Affidavit of Molly McCardle)

Defendant relies heavily on *Doe v. Howard University*, **--- F.Supp.3d ---- (2022),** 2022 WL 898862 (D.C. 2022) but this case is different.   In *DOE v Howard*, the Plaintiff's complaint was not targeted at the acts of sexual abuse, rather, she only charged Howard with failure to address her complaints in the correct manner.  Here, the Plaintiff contends that she was subjected to continued abuse as a result of DESAP and Yates' failure to comply with DC law, Title IX and DCPS policy. The Plaintiff in this matter seeks damages that arise out of the sexual abuse AND the Defendant's failures to address the harms she experienced pursuant to Title IX and DC Law.

Accordingly, she benefits from the extension of the statute of limitations regarding her claims.  Her Title IX and Section 1983 claims was filed within 1 year of her discovering that what happened to her was a violation of Title IX and Section 1983.  Her common-law tort claims have been asserted within 3 years of her discovery of the harms identified in her complaint.

In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994)

In the present case, the Plaintiff has demonstrated that Defendant Yates had been informed of the existence of a sexual relationship between Defendant Williams and Plaintiff. Accordingly, the relationship posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff who was a minor.   Defendant Yates' response to that knowledge was inadequate and showed a deliberate indifference to the offensive practices. There was a causal link between Defendant Yate's insufficient response and the particular constitutional injury suffered by the Plaintiff.

## II.    Plaintiff has Sufficiently Pled Facts Regarding Her Claims

Plaintiff's complaint includes sufficient facts to support her claims.  According to the Court in *Blue v. District of Columbia*, 811 F.3d 14,21(D.C. Cir. 2015) to succeed on her claim the Plaintiff must plead sufficient facts to allege three elements: (1) actual notice; (2) to an appropriate person; who demonstrated (3) deliberate indifference to the harassment. As set forth below, the Plaintiff's complaint has sufficient facts to advance her claims.

(1) *<u>actual notice</u>* – Plaintiff has alleged that Defendant Yates was informed of the existence of a sexual relationship in violation of Title IX and DC Law was occurring between the Plaintiff and Defendant Williams.  (Complaint @38; Affidavit of Kenneth Carroll) Defendant Yates held the position of school principal. (Complaint @14) At DESAP, the school principal is an appropriate official with the authority to take corrective measures. Unlike *Blue,* the report of a sexual relationship was directly provided to Yates. (Complaint

17

@38; Affidavit of Kenneth Carroll) Plaintiff has alleged that other staff members were aware of the relationship and the inappropriate activities alleged by the Plaintiff. (Complaint @39; Affidavit of Kenneth Carroll).  Plaintiff has alleged that Defendant District was informed of the allegations of abuse by a mandatory reporter of DESAP – Father Payne – who filed a police report. (Complaint @40). The D.C. Court of Appeals has held that the "statutory exception to formal notice [within section 12–309] is limited to police reports." *Campbell v. District of Columbia*, 568 A.2d 1076, 1078 (D.C.1990)

Notice of allegations of sexual abuse of a child require the initiation of a thorough investigation by DESAP, DCPS, and DC pursuant to Title IX.  DC Law mandates an investigation upon the reporting of ***suspected*** sexual abuse of a child to MPD. Both DC law and Title IX require that a thorough investigation be conducted upon the notice that it is ***suspected*** that a child is being subjected to any form of sexual misconduct.  The police report indicates that first-degree sexual abuse was alleged.

(2) *to an appropriate person* – Defendant Yates was a Principle of DESAP and a member of Duke Ellington Administrative Leadership. (Complaint @ 14) The Principal has the authority to implement corrective measures. (Complaint @41, 44) Corrective measures include: suspension/termination of the abuser, removal of the student from the classroom of the abuser, and any other step that could be taken to minimize the impact on the student. As a result of the report, Defendant Yates placed Defendant Williams on administrative leave. (Complaint @41, 44)

(3) *deliberate indifference* – Deliberate indifference is a "high standard," as described by the Supreme Court in Davis, and must "at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Davis v. Monroe Cty. Bd. of Educ.*, 526

U.S. 629, 643 (1999) The standard has been met here. Plaintiff alleges that after Defendants DC and DESAP became aware of the sexual abuse, no effort was made to remove her from the abusive environment. (Complaint @ 53; Affidavit of Jane Doe) Defendant Williams was placed on temporary administrative leave after the report was made to DC MPD. (Complaint @41) Plaintiff later learned that Defendant Williams had been placed on multiple periods of Administrative Leave. (Complaint @ 44) There is no record of any substantive investigation having occurred.  In fact, DCPS and DESAP have admitted that no records exist of any investigation. (NBC4 Report)

Plaintiff was subjected to harassment (verbal, mental, and physical threats of bodily harm, etc.) from other students as a result of the temporary suspension of Defendant Williams. (Complaint @ 47-49; Affidavit of Carroll) Teachers and staff were aware of the harassment endured by the Plaintiff from other students.  (Complaint @47-49; Affidavit of Carroll) After, Defendant Williams returned to DESAP, Plaintiff was forced to remain in the classes with him until her graduation.  She was required to be in the classroom with her abuser on a daily basis.  Forcing her to attend classes under the control of her abuser continued the harm she suffered because she was continually being harassed.  (Complaint @ 40, 53; Affidavit of Jane Doe) The Defendants (DC or DESAP) have not produced any evidence that a "thorough investigation" pursuant to Title IX was ever conducted. Plaintiff's inappropriate sexual relationship with Defendant Williams was ongoing and persistent until her junior year of college.  Plaintiff contends that defendants conducted an inadequate investigation, did not take affirmative steps to protect her once the insufficient investigation began, and similarly failed to protect her afterwards.

1. <u>Defendants Had Actual Notice of Ongoing Harassment</u>

Title IX has a notice requirement; however, the statute does not define what constitutes actual notice.   However, the Federal Appeals Court in Virginia (4th Circuit) has clearly identified the standard. "…[W]e hold that when a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment, that receipt establishes actual notice of such harassment for Title IX purposes. *Doe v. Fairfax County School Bd.*, 1 F. 4th 257 (4th Cir. 2021)

In the present case, a parent and a teacher were alleged to have reported to Defendant Yates that Jane Doe and Defendant Williams were having a sexual relationship. (*See* Comp. @38; Affidavit of Kenneth Carroll) The graphic details of the sex acts are not required.  According to the law in the District of Columbia any "suspicion" of sexual abuse "requires" a thorough investigation.  The report of the existence of a sexual relationship between a student and a DESAP teacher met the requirements to trigger action pursuant to Title IX, DCPS policies, and DC Law.

Title IX required each Defendant (Yates, DESAP, DCPS, and the District) to conduct a thorough investigation when there is a "suspicion" of child sexual abuse.  No evidence has been presented that any such investigation was conducted by Defendant Yates, Defendant DESAP, Defendant DCPS, or Defendant District. Minors are known to be unable to clearly articulate the gritty details of sexual abuse.  While the record reflects that Defendant Williams was placed on administrative leave, there is no evidence that any investigation took place. The record does not reflect if an investigation took place, who conducted it or what the findings were.

Many victims suppress the trauma until later in life due to the emotional damage they experience. They are not required to recite the painful, explicit details in Title IX complaints - additional details can be obtained through the discovery process.  It is inappropriate to

dismiss at this stage. Fact finding is necessary to determine the extent of the negligence claimed.  The Complaint alleges sufficient facts to support the claims of the Plaintiff.  The filing of a police report by Father Payne at the direction of Defendant Yates is clear evidence that the Defendants had actual notice of the abuse. It sufficiently stated facts necessary to facilitate an investigation under DC Law. (Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code § 22-3020.51(4)), Complaint @54,55)

2. <u>Defendant Yates was an Official with Authority to Address Complaints and Institute Corrective Measures</u>

Defendant Yates was a member of the Duke Ellington Administration Leadership with the authority to address complaints of sexual harassment and to institute corrective measures.  According to the student handbook, "...faculty, staff, or students who engage in harassment in any form— oral, written, physical abuse, or vandalism—should expect disciplinary and/or legal action to be taken against them." All members of the Duke Ellington community (parents and students) were informed that all teachers were mandatory reporters and that all reports would be investigated per the Duke Ellington Community Handbook.  "All Ellington teachers and staff are considered mandated reporters and are thus required to report any suspicions of child abuse or neglect. A mandated reporter is someone "who knows or has reasonable cause to suspect that a child known to him or her in his or her professional or official capacity has been or is in immediate danger of being a mentally or physically abused or neglected child." (2013-14 Duke Ellington Community Handbook @pp. 20-21; https://www.ellingtonschool.org/wp-content/uploads/2012/09 /Community Handbook 2013-2014.pdf ) According to the publicly released reports, the Principal at DESAP has the authority to impose suspensions,

impose administrative leave, conduct investigations of any allegation of teacher misconduct, and to terminate teachers who violate school policy.  Defendant Yates asserted her authority when she placed Defendant Williams on administrative leave.

Further, the policy of the District of Columbia and Title IX mandate that upon the receipt of a report regarding the suspicion of any sexual abuse involving a child, an investigation must be conducted.  If the report is determined to be valid, the DC MPD is required to notify other agencies within the District who have the authority to remove the child from the abusive situation. There is no record of a thorough investigation having been conducted.  Commander Pamela Wheeler-Taylor (head of MPD's Youth and Family Services Division) publicly stated that DC MPD has reopened the investigation into this matter because the failure to properly investigate at the time of the initial report. (NBC4 news report: DC Police to Reexamine Past Abuse Allegations at Duke Ellington – NBC4 Washington (nbcwashington.com))

3. The Response of Defendants Demonstrated Deliberate Indifference

Courts have determined that the initial reports provided to Defendant Yates (by a parent and a teacher) were not too vague to trigger Title IX requirements.  "At this early stage in the litigation, these alleged reports were not too vague to implicate the reporting requirements of section 4-1321.02." *Roe v. Wilson*, Case No. 18-cv-00171 (CRC) (D.D.C. Sep. 14, 2018) The mandatory reporting requirements do not require *actual knowledge* of abuse –"**reasonable cause to suspect that a child . . . is in immediate danger of being a mentally or physically abused . . . child**" triggers the reporting requirement. (D.C. Code § 4-1321.02.) [*Emphasis added.*] "…[W]e hold that when a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment, that receipt

establishes actual notice of such harassment for Title IX purposes. *Doe v. Fairfax County School Bd.*, 1 F. 4th 257 (4th Cir. 2021)

Defendant Yates was an official in Duke Ellington Administration's Leadership with the authority to address complaints of sexual harassment and institute corrective measures. Yates, nor DESAP addressed the sexual harassment or instituted corrective measures to stop the abuse from either Defendant Williams or the harassment from other students regarding the sexual student/teacher relationship. (Affidavit of Kenneth Carroll)

Failure to act in accordance with the law is evidence of deliberate indifference. The 4th Circuit held in *Doe,* 1F.4th 257 (4th Cir. 2021):

> "Under Title IX, a school acts with deliberate indifference where its "response to the [alleged] harassment or [the] lack [of any such response] is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648, 119 S.Ct. 1661. While deliberate indifference is a high standard that requires more than a showing of mere negligence, see *Baynard*, 268 F.3d at 236, "half-hearted investigation or remedial action will [not] suffice to shield a school from liability," *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 77 (4th Cir. 2016).

Plaintiff alleges that after Defendants Yates, DC, and DESAP became aware of the sexual abuse, no effort was made to remove her from the abusive environment. Defendant Williams was placed on temporary administrative leave after the report was made to DC MPD. (Complaint @41) Plaintiff later learned that Defendant Williams had been placed on multiple periods of Administrative Leave. (Complaint @ 44) Published reports have indicated that there was a pattern of conduct that resulted in Defendant Williams being repeatedly placed on administrative leave. (NBC4 Reporting) Yet, at no point was he effectively removed from the environment wherein he could abuse students. He was able to return to the school, thereby placing Plaintiff and subsequent students in jeopardy.

Plaintiff was subjected to harassment (verbal, mental, and physical threats of bodily harm, etc.) from other students as a result of the temporary suspension of Defendant Williams. (Complaint @ 47-49; Affidavit of Kenneth Carroll) There was no effort by the Defendants to stop or prevent the continued harassment from other students.  After, Defendant Williams returned to DESAP, Plaintiff was forced to remain in the classes with him until her graduation.  (Complaint @ 53; Affidavit of Jane Doe) She was required to be in the classroom with her abuser on a daily basis.  Forcing her to attend classes under the control of her abuser continued the harm she suffered because she was continually being harassed.  (Complaint @ 40, 53) Defendant Williams' sexual abuse of the Plaintiff continued until she was a junior in college – well beyond November 15, 2004.  (Complaint @53)

Further, the Plaintiff was not interviewed by Defendants Yates, DESAP, or a DC Child and Family Services Agency (DC CFSA).  Defendants failed to interview the plaintiff's friends, classmates, or other staff that had intimate details of the sexual relationship. (Carroll Affidavit)

It is reasonable to believe that the investigation was "half-hearted" or not sufficient to shield the Defendants from liability.  Failure to interview the victim or potential witnesses is prima facie evidence of indifference. Further, no evidence has been presented to reflect that the matter was ever submitted to DC CFSA in accordance with DESAP's Policy.

Pursuant to DC Law (DC Code §4-1321.02) and Title IX all educators and staff are mandatory reporters.  Meaning that a report to the DC Metropolitan Police Department or DC Child and Family Services was required.   They are also required to investigate all allegations of any form of sexual abuse or misconduct regarding students.  Defendants

24

were aware of the requirements of Title IX and DC Law regarding mandatory reporting.

Accordingly, the report to Defendant Yates established notice for DESAP, regarding

allegations of an inappropriate sexual relationship between Defendant Williams and a

student for Title IX purposes, DCPS Policy, and DC Law.

Pursuant to DCPS Guidance Defendant Yates was required to report the allegations

of the parent regarding Plaintiff Jane Doe even if she was unsure that any misconduct

occurred. (Frequently Asked Questions on Mandated Reporting of Child Abuse or Neglect

for DCPS Employees @ page 3) Had Defendant Yates complied with the mandatory

reporting, a proper investigation would have likely uncovered the full extent of the

relationship between Defendant Williams and Jane Doe. Further, a reporting of sexual

assault of a child requires DC MPD to report the incident to DC CFSA. The current record

does not reflect any such report was made by DC MPD.

A.   Defendant Williams' Misconduct was Continuous and Ongoing

Defendant Williams' misconduct was continuous and ongoing.  The report to

Defendant Yates was during the Plaintiff's senior year of high school on or about November

15, 2004.  The police report indicated a teacher was in a sexual relationship with a student.

The harassment continued through the Plaintiff's junior year of college.  (Complaint @ 53)

The Plaintiff's poetry teacher, Kenneth Carroll, advised Defendant Yates on multiple

occasions that a sexual relationship existed between Defendant Williams and the Plaintiff.

The first notice was prior to Father Payne's filing of the police report. (Carroll Affidavit) Mr.

Carroll states that he was alerted to the existence of a sexual relationship between

Defendant Williams and the Plaintiff when he overheard students discussing the sexual

relationship in his classes.  Mr. Carroll suggested that Defendant Yates immediately inform

the parents and students of the allegation.  Defendant Yates advised that she would handle the situation. (Carroll Affidavit)

The second notice to Defendant Yates was also prior to the police report.  A student who was a close friend of the Plaintiff called Mr. Carroll and provided detailed information regarding the sexual relationship between Defendant Williams and the Plaintiff.  Mr. Carroll shared the information with Defendant Yates.  Defendant Yates directed Mr. Carroll not to talk about the situation. (Carroll Affidavit)

The third notice to Defendant Yates was soon after the police report was filed.  On or about November 17, 2004, a newspaper article in the City Paper (Incident #633) cited that "...a parent of a student had reported to the Dean of Students that her daughter told her that a male teacher is always calling a female student, and that they have been meeting at Cosi restaurant.  MPD was notified. A detective from the 2nd District responded to the school..." Mr. Carroll took the article to Defendant Yates.  She told him it was none of his business. (Carroll Affidavit)

Plaintiff informed Mr. Carroll that some students were harassing her and making her life unbearable because of Defendant Williams being placed on administrative leave.  She requested that Mr. Carroll address the behavior and advised that she was having difficulty in her classes.  (Complaint @48)

Defendant Yates sent messages via Facebook to Plaintiff wherein she acknowledged that she was aware of Defendant Williams' behavior and had knowledge of other students impacted as a result.  (NBC4 reporting, Jane Doe Affidavit)

B.  Yates and DESAP Was Aware of Known Acts of Sexual Misconduct

It is not required that the Plaintiff allege specific known acts when the allegation is one of a teacher/student sexual relationship in violation of Title IX and DC Law.  Courts have held that the report of a sexual relationship between a student and a teacher to the principal (a person who has the authority to institute corrective measures) was effective notice pursuant to Title IX. "...[W]e hold that when a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment, that receipt establishes actual notice of such harassment for Title IX purposes. *Doe v. Fairfax County School Bd.*, 1 F. 4th 257 (4th Cir. 2021)

Pursuant to Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code § 22-3020.51(4)) and School Safety Omnibus Amendment Act of 2018. D.C. ACT 22-624 any report of sexual abuse of a child mandates persons take action to protect the minor child. The Act requires the reporting of any "suspicion" of sexual abuse.  The Act does not require specific details of the sexual abuse before action is required.

Further, Father Payne reported the sexual relationship to DC MPD on November 16, 2004, and the completed report specified that the student had been subjected to first-degree sexual abuse.  Pursuant to DC Law a report of suspected child sexual abuse requires a complete investigation.  There is no evidence that a complete investigation was conducted.  According to the City Paper (Incident #633, published November 17, 2004) an MPD Detective from 2nd District was sent to the school to investigate a report

of a sexual relationship between a teacher and a student. No further information has been provided by DC MPD regarding any investigation.

There is no evidence that any thorough investigation was conducted by DESAP. DESAP has acknowledged that no HR records regarding the reporting is available. (NBC4 Reporting) DESAP was aware of the sexual relationship between a teacher and a student and that a student was not capable of providing "consent" pursuant to DC Law, DESAP policy, and Title IX.

C.  Appropriate Officials Were Informed of the Sexual Misconduct

Pursuant to Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code § 22-3020.51(4)) and School Safety Omnibus Amendment Act of 2018. D.C. ACT 22-624, all educational entities in the District of Columbia were charged with the duty to protect all students from any potential sexual abuse.  They were effectively mandated agents of the District of Columbia as a condition of their existence within the city's border.

As previously stated, Defendant Yates was an appropriate official under Title IX who had the authority to take action and institute corrective measures.  She was the principal of DESAP. Plaintiff stated in her complaint that Defendant Yates placed Defendant Williams on administrative leave. (Complaint @41) Defendant Yates was a part of the Duke Ellington Administrative Leadership. She had the authority to take corrective measures including but not limited to: removing the injured student from her abuser's class, suspending or placing the teacher on administrative leave, or terminating the teacher for his criminal behavior.

The Plaintiff's complaint faults Defendant Yates and DESAP for their collective failure to adequately report the sexual misconduct to proper authorities.  The proper

authorities here included DC CFSA, DCPS, and any other agency of the District of Columbia

who should have been notified as well as DC MPD.  There is a record of a police report

having been filed by Father Payne – yet no record of any reports filed by Defendant Yates

or DESAP to DCPS, CFSA, or any other agency as required by DC Policy or Title IX.

IV. Plaintiff's Common Law Claims

    A.  Plaintiff's Claim for Negligent Training, Supervision and Retention

    Defendant Williams was employed by DESAP. DESAP is a school located in the

District of Columbia and is governed by DCPS policy and District of Columbia Regulations.

DCPS is the official policy making body of the District's school system.  (Complaint @ 4) All

operations of DESAP are governed by a board that includes DCPS as a member.  The Board

governs all operations of DESAP pursuant to the sole source contracts administered by

DCPS.  DCPS' policy bound DESAP agents, teachers, educators, and/or servants pursuant to

the sole source contracts. (Complaint @5-7, 116,117)

    "Under the doctrine of *respondeat superior*, an employer may be held liable for the

acts of his employees committed within the scope of their employment." Boykin v. District

of Columbia, 484 A.2d 560, 561 (D.C.1984) The Plaintiff has made it clear that Defendant

Williams was acting within the scope of his employment when he committed the alleged

offenses against the Plaintiff.  (Complaint @13,15, 20,27, 58-65)   Defendant Yates was in a

supervisory position that had authority to train, supervise, and discharge Defendant

Williams. Defendant Yates failed to remove the Plaintiff from the cone of danger

surrounding Defendant Williams.  Thus, the Plaintiff was directly harmed by Defendant

Yates failure to remove her from the cone of danger.

It was during this period that the District of Columbia passed the Child and Youth, Safety and Health Omnibus Amendment Act of 2004 ("CYSHA"), D.C. Official Code § 4-1501.05, et seq. The act required all current and prospective DCPS employees, program partners, contractors, student teachers, interns, and volunteers must complete a criminal background check before providing services to any DCPS student, school, or office. It is clear that DESAP is an entity subject to this act.  DESAP is a program partner that provides DCPS students with educational opportunities.

Defendant Williams committed the harm to the Plaintiff. DESAP failed to comply with CYSHA. DESAP failed to ensure that Defendant Williams possessed the necessary credentials to teach at a school subject to DCPS policy in the District of Columbia. Defendant Yates failed to take corrective action and implement changes in accordance with Title IX and DC Law/Policy.

In the present case, Defendant Yates was informed that a sexual relationship existed between Defendant Williams and the Plaintiff.  A police report was filed with DC MPD that identified that a child had been subjected to first-degree sexual abuse.  It also indicated that there was a sexual relationship between a teacher and a student. (Complaint @38, 40; Police Report) A sexual relationship between a teacher and a student is a violation of both DC Law and Title IX.  The law requires that any "suspicion" of this type of relationship required Defendants Yates to take action to prevent further harm to the student. Defendant Yates did not take effective action to protect the student. Plaintiff was forced to remain in the classes with her abuser through her graduation. (Complaint @53)

According to published DC Prevention of Student Sexual Abuse Staff Policy, staff are strictly prohibited from engaging in, encouraging, or entertaining sexual or romantic

relationships with students, regardless of the employee's or student's age. Staff are prohibited from transporting students in their personal vehicles or meeting with students off school grounds and outside of school hours without the knowledge and consent of the student's parent or guardian. Any staff who engages in such prohibited conduct will be subject to discipline. (DC Prevention of Student Sexual Abuse Staff Policy)

Defendant Williams violated this policy when he transported Plaintiff to various locations, communicated inappropriately with Plaintiff, provided alcohol, and maintained a sexual relationship with the Plaintiff.  (Complaint @24-39) These acts continued after the Plaintiff graduated from DESAP in 2005 and did not end until the Plaintiff's junior year of college. (Complaint @53) Defendant Yates did not take action to correct Defendant Williams' behavior in violation of CYSHA, and other DC Laws.

The record reflects that after the reporting of the alleged sexual abuse of the Plaintiff, the Defendant Yates failed to take steps to reduce the harm to the Plaintiff.  Plaintiff was forced to remain in the control of her abuser until and after her graduation.

"...[I]t is incumbent upon a party to show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Giles v. Shell Oil Corp.*, 487 A.2d at 613.  Here the Plaintiff has demonstrated that Defendants were informed of the dangerous behavior of Defendant Williams in November 2004 and they failed to adequately supervise the employee through graduation in 2005.  The notice to Defendant Yates was sufficient to trigger an investigation pursuant to Title IX and the filing of a police report would trigger the requirement of an investigation by the District pursuant to DC policy, DC Law, and Title IX.

Further, each of these "notice points" should have armed the Defendants with actual *and* constructive knowledge of Defendant Williams dangerous behavior. The record reflects that they failed to adequately supervise him afterward.

Further, any report made to DC MPD regarding a teacher having a sexual relationship with a student would require the District to review its impact on the partnership agreements with DESAP. At a minimum, notification would have been provided to the board. Additionally, Defendant DESAP has not denied that Defendant Williams was not hired in accordance with the established policy of DCPS or the District's policy related to teachers of DCPS students.

B.   Plaintiff's Claim for Intentional Infliction of Emotional Distress

The Court in *Kowalevicz v. US*, 302 F. Supp. 3d 68 wrote, "To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002). "Liability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." District of Columbia v. Tulin, 994 A.2d 788, 800 (D.C. 2010) (citation omitted). Rather, "[t]he conduct must be `so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Homan v. Goyal, 711 A.2d 812, 818 (D.C. 1998)). "

While the determination of whether conduct is "extreme and outrageous" is in the first instance a question of law, *Drejza v. Vaccaro*, 650 A.2d 1308, 1316 (D.C.1994), where reasonable people could differ on the question, the issue must be submitted to the jury,

*Herbin v. Hoeffel*, 806 A.2d 186, 197 (D.C. 2002) (citation omitted). As the District of

Columbia Court of Appeals observed, a case of intentional infliction of emotional distress

typically succeeds "if the recitation of the facts to an average member of the community

would arouse his resentment against the actor, and lead him to exclaim `Outrageous!'"

*Larijani,* 791 A.2d at 44 [*Larijani v. Georgetown Univ.,* 791 A.2d 44 (D.C. 2002)]*(emphasis

added*) *Morton v. D.C. Housing Auth.*, 720 F.Supp.2d 1, 9-10 (D.D.C. 2010)

 The conduct of the Defendants Williams, DCPS (District), Yates, Pullens, and DESAP

was extreme and outrageous and caused the plaintiff severe emotional distress.  Defendant

DESAP received a report of a sexual relationship between Defendant Williams and Plaintiff.

Defendant Williams engagement in a sexual relationship with a student, providing alcohol

to a student, and transporting the student to various locations for the purpose of furthering

the sexual relationship was extreme and outrageous conduct. The actions identified met

the elements of first-degree sexual abuse pursuant to law in the District of Columbia.  The

sexual abuse of a child is utterly intolerable in our community.

 The District recklessly failed to ensure that precautions were taken to remove the

Plaintiff from the zone of danger – the classroom of Defendant Williams.  The District was

aware that first-degree sexual abuse of the Plaintiff had occurred and that Defendant

Williams was in a sexual relationship with a student who was not consensual age. Yet, no

arrest was made, no interview of potential witnesses, no examination of the Plaintiff

occurred, and no effort was made to curb or stop the sexual abuse of the Plaintiff.

 Yates' failure to properly investigate the reported first-degree sexual abuse of a

child shocks the consciousness.  The law in the District of Columbia mandates that a

thorough investigation should have occurred.  Title IX requires that a thorough

investigation should have occurred.  The failure to ensure that all required investigations were completed as required by law demonstrates extreme outrageous conduct.  DESAP and Yates failed to adequately protect the Plaintiff.

The Plaintiff has suffered severe emotional distress with physical manifestations which will be sustained by the presentation of medical testimony and records.  The Plaintiff has been unable to sleep, unable to obtain and sustain employment, unable to establish relationships with male figures, fearful of men in positions of authority, and is distrustful of the police. The Plaintiff suffers from extreme anxiety, depression, and a host of other physical and mental conditions as a result of the Defendant DESAP's failure to take steps to protect her when it was informed that she had been subjected to first-degree sexual abuse by Defendant Williams.

C.       The Plaintiff's Claim for Negligence

For the Plaintiff's claim of negligence to be sustained, the Plaintiff must show a duty of care owed by the Defendant, a breach of that duty, damages as a result of the breach which were proximately caused by the breach.

The Plaintiff's complaint alleges that the Yates owed a duty to protect the Plaintiff. DC has statutory requirements for all education professionals to safeguard the students and protect them from any form of sexual harm. Anti-Sexual Abuse Act of 1994, effective May 23, 1995 (D.C. Law 10-257; D.C. Official Code § 22-3020.51(4)) and subsequently, School Safety Omnibus Amendment Act of 2018. D.C. ACT 22-624.  Defendant Williams was never subjected to a background check as required by the statute.  DCPS is the agency of the District of Columbia that institutes and implements policy for all educational entities within the borders of the District of Columbia.  DESAP is a private public partnership that is

34

governed by an independent board of which, DCPS is a member.  DCPS board membership affords it a role in governance of the DESAP institution.  The failure of DESAP to ensure that it complied with the published policies and standards required by DCPS for all partners to have background checks was a breach of the duty of care owed to the Plaintiff.  Yates failure to remove the student from the control of her abuser after receiving the report of the sexual relationship was a failure of the duty to protect students.

Defendant Yates had a duty to comply with Title IX policy related to reports of sexual abuse of a student.  It is the policy under Title IX that when a student is subjected to sexual abuse they are to be removed from the care and control of the suspected abuser. This did not occur; nor, did Yates conduct follow up to ensure that compliance with DC Law or Title IX was achieved.

The failure to remove the student from the control of the abuser furthered the harm she has suffered.  This was a breach of the duty of care owed to the Plaintiff.  Additionally, the harm to the Plaintiff continued for several years after the initial reporting. The Plaintiff suffered additional damages as a result of the failure to remove her from the care and control of her abuser. Plaintiff suffers from extreme anxiety, depression, inability to obtain and sustain meaningful employment, and other emotional, physical, and financial damages. Medical providers will be called to provide testimony and reports regard the damages claimed.  The Plaintiff can testify regarding her damages as well.

The breach of this duty denied the Plaintiff the adequate care and attention that all schools in the District of Columbia were to provide.  Yates and DESAP should have notified DC CFSA who would have deployed the adequate counseling that is mandated for child victims of sexual abuse. As a result of the breach of this duty, none of the necessary counseling, care, or emotional support afforded to child victims of sexual abuse was provided to the Plaintiff. The Plaintiff was subjected to

years of abuse after the breach of this duty and suffered emotional, psychological, and financial

damages as a result.

Respectfully submitted,

_____/S/_____
Dawn Jackson, Esq. (Bar No. 485118)
JACKSON & ASSOCIATES LAW FIRM, LLC
1300 Caraway Court
Suite 100
Largo, MD 20774
301 883 0800 Tel.
301 883 0801 Fax
djackson@jacksonassociateslawfirm.com
**Counsel for Plaintiff**

_____/S/_____
Howard Haley, Esq. (Bar No. 999376)
Haleyfirm@gmail.com
7600 Georgia Ave, NW #416
Washington DC 20012
V: 202-810-6329
F: 202-706-7375

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th Day of August 2022, a copy of the foregoing Plaintiff's Opposition to Defendant District of Columbia's Motion to Dismiss was served *via* the Court's ECF System.

**Copies To:**

Dawn R. Anderson-Jackson, Esq.
djackson@jacksonassociateslawfirm.com
Howard Haley, Esq.
HaleyFirm@gmail.com
*Counsel for Plaintiff*

James Arland Wiley
Stephanie Litos, Esq.
Jim.wiley@dc.gov
Stephanie.lios@dc.gov
*Counsel for Defendants District of Columbia
and DC Public School System*

Nat P. Calamis, Esq.
Nat.Calamis@carrmaloney.com
Samantha N. Lewis, Esq.
Samantha.Lewis@carrmaloney.com
*Counsel for Defendant DESAP*

Anessa Abrams
Aabrams@fordharrison.com
*Counsel for Defendant Pullens*

_____/s/_____
Dawn Jackson, Esquire